## J. S. MASTERSON v. THOMAS MASTERSON.

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER
COUNTY.

Argued May 16, 1888—Decided October 1, 1888.

1. In an action to recover commissions for services rendered as a factor, it is not requisite that the plaintiff should have been in regular business as a commission merchant or broker, and, in the absence of express stipulation, the usual and customary commissions are earned when the services are rendered.

2. If, in such an action, a witness for the plaintiff testify that he purchased the goods sold, through the mediation of the plaintiff, it is admissible to show that the goods were purchased by another person, through the assistance of the witness, and that the witness received a commission on the sale from the defendant.

Before GORDON, C. J.; PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 35 January Term 1888, Sup. Ct.; court below, No. 31 February Term 1886, C. P.

On January 22, 1886, an appeal was filed by the defendant from the judgment of a justice of the peace, in favor of Thomas Masterson against John S. Masterson, for $117. The cause was put at issue under the pleas, non assumpsit, payment, payment with leave, etc.

At the trial on September 2, 1887, the plaintiff testified, in substance, that in October 1885, he had met his brother Thomas Masterson, the defendant, at the Grape Hotel in Lancaster, and was authorized by him to procure for him a purchaser for his tobacco, and if the plaintiff procured a purchaser, his brother was to pay him a commission for his services; that he was not a commission merchant or broker; that subsequently he introduced one Michael Kauffman to the defendant, who afterwards purchased the tobacco, of which there were 117 cases.

James B. Fry, called for plaintiff:

Q. Where a person is employed by a seller to secure him a

purchaser for leaf tobacco, packed in cases, and he introduces a purchaser to the seller, and a sale is effected, what is the usual price or commission, per case, paid by the seller to the broker or party who secured the purchaser, in the absence of an express contract as to what shall be paid for the services? Objected to by the defendant.

By the court: Allowed. [6]

The witness testified that the usual and customary commission in such sales was $1 per case.

Michael Kauffman, called for plaintiff, testified that he had purchased the tobacco from the defendant on November 3, 1885, after having been introduced to the latter by the plaintiff on October 31, 1885. His testimony appears more fully in the Opinion. On cross-examination, he was asked:

Q. Did not you take Jacob Mayer, of this city, to John Masterson, the defendant, to buy this tobacco, and didn't Mayer do the negotiating with Masterson for the purchase of this tobacco, and didn't Mayer buy it himself from Masterson in your presence, and did you not then go to Mr. Masterson and say, "Now I effected this sale and I want my commissions," and didn't you say the custom was 50 cents per case, and didn't John Masterson pay you 50 cents per case? Objected to by plaintiff.

By the court: Disallowed as a whole. [1]

Q. Was not this tobacco sold to Jabob Mayer at this time by Mr. Masterson, in your presence, and did not Mr. Masterson pay you the commissions you asked for the sale of this tobacco? Objected to by the plaintiff.

By the court: As a whole, disallowed. [2]

Q. Did you or did you not ask Jacob Mayer, the purchaser of this tobacco, $1 per case, for bringing him up and showing him the tobacco? Objected to by plaintiff.

By the court: Disallowed. [3]

In his case in chief, the defendant denied that he had authorized his brother to procure him a purchaser for his tobacco, or promised to pay him a commission for so doing, and testified that he had sold the tobacco to Jacob Mayer. His testimony sufficiently appears in the Opinion. He was asked by his counsel:

Q. Did you or did you not pay to Mr. Kauffman 50 cents per

case as commission for bringing Mr. Mayer, the purchaser of this tobacco, to you? Objected to by plaintiff.

By the court: Disallowed. [4]

Jacob Mayer, called for defendant, testified that he bought the tobacco from the defendant, with the help of Michael Kauffman, who took him to the defendant; that the contract was made with the witness, who paid the defendant for the tobacco. On cross-examination he was asked:

Q. Did you not see John S. Masterson pay to Mr. Kauffman commissions as the broker, in bringing you and Masterson together in the sale of this tobacco? Objected to by plaintiff.

By the court: Disallowed. [5]

The defendant testified to indebtedness of the plaintiff to an amount exceeding the plaintiff's claim, which testimony was rebutted by the plaintiff.

The court, LIVINGSTON, P. J., after reviewing the testimony, charged the jury as follows:

[If you find from the evidence that defendant did agree with plaintiff that if he would bring him a buyer he would pay him commissions, and that plaintiff did bring him a buyer, Mr. Kauffman, and that Mr. Kauffman bought the tobacco, and not Mr. Mayer, then and in such case the plaintiff would be entitled to your verdict for the commissions, $1 on each case, unless you find also from the evidence that plaintiff was at that time indebted to the defendant in a larger amount than the amount of such commissions. If you find he was, your verdict will be for defendant.] [7] If you find he was indebted to defendant in a less amount than the amount of commissions, you will deduct such indebtedness from the commissions, and render your verdict for the plaintiff for the balance, with interest. [But if you find that defendant did not agree with plaintiff, or promise to pay him commissions; that plaintiff did not ask him to do so; that he did not bring defendant a buyer, but simply a man who said he thought *he* could find him a buyer; that Kauffman, who was introduced by plaintiff to defendant, did not buy the tobacco at all, but that Jacob Mayer bought it from defendant himself and for himself, your verdict should be for defendant.] [8]

The jury returned a verdict in favor of the plaintiff for

$129.87.    Judgment having been entered, the defendant took this writ, assigning as error:

1–5. The refusal of defendant's offers. [1 to 5]

6. The admission of plaintiff's offer.[6]

7, 8. The parts of the charge embraced in [ ] [7 8]

*Mr. H. C. Brubaker*, for the plaintiff in error:

*Mr. J. L. Steinmetz*, for the defendant in error:

OPINION, MR. JUSTICE CLARK:

This action was brought by Thomas Masterson against his brother, John S. Masterson, to recover commissions on the sale of one hundred and seventeen cases of leaf tobacco. The plaintiff was not at the time in business as a commission merchant, but he claims to have acted for his brother in this behalf, under a special agreement that he should have commissions if he brought a buyer. He claims that he did bring to his brother a buyer, one Michael Kauffman; that Kauffman actually bought the tobacco, and that he is therefore entitled to commissions. The defendant denies that he had any agreement whatever with his brother for commissions, and alleges that he sold the tobacco to one Jacob Mayer, and not to Kauffman, and these were the leading questions of fact which went to the jury.

Michael Kauffman, having been called as a witness, testified that in the year 1885 he was engaged in the business of buying tobacco; that Thomas Masterson came to him on the 31 October, 1885, and told him of this lot of tobacco; that Thomas introduced him to his brother, and on November 3, in company with Mayer, he went to see it. His statement of what then occurred is as follows: "When dinner was ready Mr. Masterson took us up and gave us dinner; before Mayer and I were done with dinner, Masterson got up and went over into his store; Mayer said to me, You had better follow him up; and I left the table and did so; Masterson said, I want to figure over this a little; I said to Masterson, There is no use in figuring, I'll give you 7 cents through for the tobacco; Masterson said, No, I wont take it, I'll take $7\frac{1}{2}$; then Mayer came over and asked me what I had done; I told him I hadn't bought it yet;

Mayer and I went to the house again and looked over the grades of the goods; went up again to the store-room; Mayer and I went out on the porch, then I went back to Masterson in the store-room; I said, Mr. Masterson, aint you going to take the 7 cents? He said, No; he said, I'll take 7¼; I then said to him, Mr. Masterson, I'll tell you what I'll do, I'll split with you, I'll give you 7⅛ ($7.12½ per 100 pounds); then I went out and told Mayer he'd take $7.12½, that is the least he will take; I said, You must take it or I will; he said, Well, I'll take it; went in and drew up the agreement . . . . . I dealt with Masterson for the tobacco and Mayer says, Let me have the goods. . . . . Mayer says, I'll allow you so much commission if you will let me have the goods. . . . . Mr. Mayer wrote up the contract, but I dealt for the tobacco. I bought the tobacco and let Mr. Mayer have it."

John S. Masterson, on the other hand, testifies: "He (Kauffman) came up afterwards to my place at Mastersonville; Jacob Mayer was with him; we had a talk a few minutes and went to the warehouse to see the samples of tobacco; they went through the samples; Mr. Mayer looked at the samples; while he was looking at the samples Kauffman called me back in the warehouse and asked me, if there would be a sale effected, whether I would allow him commissions; I told him I would, so we got a-bargaining, I and Mr. Mayer. (Shown paper.) This is the contract we made; there were one hundred and seventeen cases; then it was done. My brother did not mention commissions at The Grape, or at any other time or place, before the sale; he did not ask me if I would give him commissions if he brought me a purchaser; there was nothing of the kind said; two weeks or a week after, when I came to Lancaster, Mayer paid me for the tobacco; Kauffman did not buy the tobacco from me, Mayer bought it; Kauffman brought him to me." Masterson is in the main corroborated by Mayer, who says he bought the tobacco and that Kauffman had nothing to do with it.

Now, even if it be true that Thomas Masterson did introduce Kauffman to his brother as a buyer and Kauffman went to Masterson pursuant to the arrangement alleged, if in fact he did not buy the tobacco either for himself or for Mayer, Thomas Masterson was not entitled to commissions. A bro-

ker's commission is earned only when he procures a buyer who will comply with the terms and conditions of sale fixed by the principal. The defendant testified that he sold the tobacco to Mayer, and Mayer says that Kauffman had nothing to do with it. If this be true, in the absence of artifice or complicity of the parties, Thomas Masterson cannot be said to have found a buyer, and in that case would not be entitled to commissions.

Kauffman was the witness upon whose testimony the plaintiff relied wholly to establish a sale through his agency. A question of veracity was raised, however, between Kauffman on the one side and John S. Masterson and Mayer on the other, and what the true nature of the transaction was depended upon which theory of the case the jury might accept. In this condition of the proofs it was certainly competent for the defendant to show that the conduct of Kauffman at the time was inconsistent with his statement that he himself was the purchaser of the tobacco. As affecting the veracity of Kauffman, we cannot see why it was not proper to show that he demanded and received a commission on this sale from John S. Masterson, for that was in some sense inconsistent with the theory that he was the buyer. At all events, it was a proper matter for the consideration of the jury in determining what relation Kauffman bore to the transaction in question, and the evidence, we think, was improperly excluded.

It is a matter of no consequence that Thomas Masterson was not in business as a commission merchant or broker; in the absence of any express stipulation as to the price of his services he was entitled to receive the usual and customary commissions, and this was for the ascertainment of the jury.

> The judgment is reversed, and a venire facias de novo awarded.